## Borough of Susquehanna Depot *versus* Barry.

1. A borough council resolved: That all who were liable to be drafted to fill a designated quota, " and did before said draft, furnish an acceptable representative, and get him accredited on said quota, or, who was drafted, and then furnished a substitute, or went into the United States service themselves, shall be entitled to receive $300," &c. *Held*, that a bond issued under this resolution was without authority, and a recovery could not be had on it.

2. There was no legal or moral obligation on the borough to pay a drafted man.

March 11th 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Susquehanna county:* No. 299, to January Term 1869.

In the court below John Barry to the use of J. M. Donley, brought an action of debt against the borough of Susquehanna Depot. The writ was issued August 6th 1867.

The suit was founded on the following bond:—

" No 28. Know all men by these presents, That the corporate authority of the borough of Susquehanna Depot, in the county of Susquehanna, acknowledge to be indebted to John Barry, or bearer, in the sum of three hundred dollars, lawful money of the United States, to be paid to the said John Barry, or bearer, at the office of the treasurer of the borough of Susquehanna Depot, in five equal annual instalments—the first instalment to be paid on May 1st 1865; the second, May 1st 1866; the third, May 1st 1867; the fourth, May 1st 1868; the fifth, May 1st 1869—together with the interest thereon, at the rate of six per cent. per

[Borough of Susquehanna Depot *v.* Barry.]

annum, to be paid on the presentation of the annexed interest warrant and coupons.

" The above obligation being issued in pursuance of a resolution of the borough council passed November 7th 1864, and being for a remuneration to persons who have enlisted, furnished representatives or substitutes, to fill the quota of said borough, under the call of the President of the United States, July 18th 1864, for 500,000 men.

In witness whereof, the said Town Council have caused this bond to be signed by the chairman of the board and [L. S.]   attested by the secretary, and to be affixed thereto the borough seal this seventh day of December, A. D. 1864.

Attest:                                    J. P. MARTIN, President.
     E. W. SMITH, Secretary."

Attached to the bond were coupons, " being interest due on bond No. 28, issued by said borough for bounty to volunteers."

The plaintiff on the trial offered the bond in evidence; it was objected to by the defendant because no authority had been shown for issuing it.   The court admitted it, and sealed a bill of exceptions.

The plaintiff then rested.

The defendant gave in evidence the following proceedings of the borough council:

Resolution of November 7th 1864, viz.:

" Whereas, Under the late call of the President of the United States, the borough of Susquehanna Depot did not, as a corporation, furnish any means to fill the quota of said borough.   Therefore, be it resolved, that, to all those who were liable to be drafted, to fill said quota, and did, before said draft, furnish an acceptable representative, and get him accredited on said quota, or who was drafted, and then furnished a substitute, or went into the United States service themselves, shall be entitled to receive $300, provided that all employees of the Erie Railroad Company, who, by virtue of an offer made by the said company, to give $100, and have substitutes furnished them, shall not be entitled to receive the same."

The defendant gave further evidence by Beach Helme, the draft commissioner, that the draft under the call of July 1864, took place in September of that year, and that this was the last draft in that year.

The court, (Streeter, P. J.), instructed the jury to find for the plaintiff, reserving the question whether he had shown a right to recover.   The jury found for the plaintiff for $212.40.   The court afterwards entered judgment on the verdict.

The defendant took out a writ of error, and assigned for error

the admission of the bond in evidence, and entering judgment on the verdict.

*W. J. Turrell* and *L. P. Hinds*, for plaintiff in error.—There was no agreement with the public authorities to pay the bounty before those referred to in the resolution and bond had entered into the service, and there was therefore no consideration for the bond or authority to issue it. There was no contract relation; this is essential: Meek *v.* Bayard, 3 P. F. Smith 217; Guilford Sch. Dist. *v.* Zumbro, 5 Id. 433; Gregg Tp. *v.* Jameson, Id. 474; Musser *v.* Ferguson Tp., Id. 478; Wash. Co. *v.* Berwick, 6 Id. 474. A municipal corporation is not estopped by the illegal acts of its officers. There is a difference between defective execution of authority and acting without authority: Fox *v.* N. Liberties, 3 W. & S. 105; Armstrong *v.* Allegheny Co., 1 Wright 287. They cited also, Acts of April 14th 1863, Pamph. L. 443, and of March 25th 1864, Pamph. L. 85; Speer *v.* Blairsville, 14 Wright 150; Foulke *v.* West Bethlehem Township, 3 P. F. Smith 221; Debolt *v.* School District, Id. 214; School District *v.* Learn, Id. 180; Kennedy *v.* Ware, 1 Barr 451; Paul *v.* Stackhouse, 2 Wright 304; Chitty on Contracts 46; Opinion of the Judges— Supreme Court of Maine, Amer. Law Reg., 621.

*R. B. Little*, for defendant in error.—The bond being payable to "bearer" was transferable by delivery: Commonwealth *v.* Allegheny Co., 1 Wright 277. He referred also to Act of March 25th 1864, § 6; Meek *v.* Bayard, Musser *v.* Ferguson Tp., Gregg Tp. *v.* Jameson, *supra.*

The opinion of the court was delivered, March 27th 1869, by

READ, J.—This is an action of debt on a bond for $300, dated 7th December 1864, given by the borough of Susquehanna Depot to John Barry. Under the call of the President of the United States for 500,000 men, the quota of Susquehanna Depot was filled by a draft, which was duly executed, and every man in the borough liable to military service was mustered in either in person or by a representative. After this was entirely completed, the borough council on the 7th November 1864, passed the following resolution.

"Whereas, under the late call of the President of the United States, the borough of Susquehanna Depot, did not, as a corporation, furnish any means to fill the quota of said borough.

"Therefore, be it resolved, that, to all those who were liable to be drafted to fill said quota, and did before said draft furnish an acceptable representative and get him accredited on said quota —or who was drafted and then furnished a substitute—or who went into the United States service himself—should be entitled to

[Borough of Susquehanna Depot *v.* Barry.]

receive $300; provided that all employees of the Erie Railway Company who by virtue of an offer made by the said company, to give $100, and have substitutes furnished them, shall not be entitled to receive the same."

Under this resolution, which is recited in it at length, this bond was given, dated 7th December 1864, and the question is, had the borough council any authority to pass such a resolution and to give this bond. There was clearly no legal obligation upon the borough to pay $300, or to give a bond for that sum to a drafted man, nor was there any such moral obligation as will support the bond in suit. All the men were actually in the service of the United States, the quota of the borough was filled, and it was relieved entirely from the draft. There had been no previous contract relation of any kind either by meetings of the people or otherwise. The language of my brother Agnew in Washington County *v.* Berwick, 6 P. F. Smith 474, is peculiarly apposite. Speaking of Weister *v.* Hade, 2 P. F. Smith 474, he says " In the latter case, where the doctrine of an imperfect, or as it is termed, a moral obligation was resorted to, in aid of the legal duty imposed, the money was advanced at the instance of public meetings of the people, and upon the assurance of the passage of a law to refund it, which was obtained and accepted and acted upon by the public authorities. The public faith was fully and clearly plighted, and the people were relieved from the draft by the payment of the money advanced. Nothing was needed, but the legal authority to enforce the obligation, and this the legislature gave."

Here the borough council had clearly no authority to pass this resolution, and of course none whatever either to pay the money or to give the bond for its payment.

Judgment reversed.